UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BARBARA RIVERO, JAMES WICE, TANJA MILOJEVIC, CORY KADLIK, BOSTON CENTER FOR INDEPENDENT LIVING, and BAY STATE COUNCIL OF THE BLIND,<br><br>    Plaintiffs,<br><br>    v.<br><br>WILLIAM FRANCIS GALVIN, in his Official Capacity as Secretary of the Commonwealth of Massachusetts, and the DEPARTMENT OF THE STATE SECRETARY,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   C.A. No. ___<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

## I.    INTRODUCTION

1.      Plaintiffs Barbara Rivero, James Wice, Tanja Milojevic, Cory Kadlik, Boston Center for Independent Living ("BCIL"), and Bay State Council of the Blind ("BCBS") bring this action against Defendants William Francis Galvin, in his official capacity as the Secretary of the Commonwealth of Massachusetts, and the Department of the State Secretary for operating an Accessible Vote by Mail ("AVBM") program that does not provide meaningful access to voters with print disabilities in violation of Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131 *et seq*., and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794 *et seq*.

2.      Voting privately and independently is one of the most fundamental and cherished American rights. For too long, American voters with disabilities have regularly been denied this right. While there has certainly been progress in making voting at the polls more accessible, the

1

threat of COVID-19 has presented new problems for voters with disabilities. Remote voting options that allow voters to complete their ballots from the safety of home, like absentee voting and vote by mail, generally involve completion of a paper ballot, which is simply inaccessible to voters with print disabilities.

3.      In August 2020, Massachusetts implemented an AVBM program – as an accommodation available for voters with disabilities who cannot access the paper vote by mail ballot – to provide an accessible electronic ballot that voters with print disabilities can mark privately and independently online in their web browser using their computers, tablets, smartphone and their personal assistive technology and devices.

4.      Unfortunately, after the ballot marking stage, the process that voters must complete in order to cast their electronic ballot, as required by the current AVBM program, is replete with barriers to accessibility for Plaintiffs and similarly situated voters who are blind or have low vision, mobility/dexterity disabilities, or other disabilities that make it difficult or impossible for them to effectively access standard printed text ("print disabilities"). People with print disabilities may experience this limited or complete lack of access to standard printed text because they cannot read, write, hold, or physically manipulate standard print materials.

5.      The barriers incorporated into Defendants' AVBM program require Plaintiffs and other voters with print disabilities to get assistance from third parties in order to cast their ballots, thereby denying them the opportunity to exercising their right to vote privately and independently from home like non-disabled Massachusetts voters.

6.      There are readily available options that Defendants could implement to make the AVBM program accessible and available to Plaintiffs.

7.      One such option includes permitting Plaintiffs to return their ballots by email. The

Department of the State Secretary currently permits military voters, dependent family members of military voters, and overseas citizens, who are protected by the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA), the option of returning their ballots in all elections by email.[1]

8.      Even if only a temporary solution for the 2020 general election, allowing voters with print disabilities to submit their AVBM electronic ballots and an electronic affirmation concerning their ballot and voter information via email would address accessibility barriers to the existing vote by mail and absentee voting programs available in Massachusetts for voters with print disabilities who cannot otherwise vote privately and independently.

## II.      JURISDICTION & VENUE

6.      This Court has jurisdiction over Plaintiffs' federal law claims pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

7.      Plaintiffs are entitled to declaratory and other relief deemed necessary and proper pursuant to 28 U.S.C. §§ 2201 and 2202.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## III.     PARTIES

9.      Plaintiff Barbara Rivero is registered voter who resides in Boston, Massachusetts. Ms. Rivero wants to vote in the 2020 general election privately and independently from home by participating in the Commonwealth's AVBM program. She is quadriplegic, ventilator dependent,

---

[1] Secretary of the Commonwealth of Massachusetts, Voting for Military and Overseas U.S. Citizens, https://www.sec.state.ma.us/ele/elemil/milidx.htm.

and uses a wheelchair pushed by her personal care attendant. She is among the high-risk category of serious or fatal complications due to COVID-19. Ms. Rivero is adept at using her computer with sip/puff assistive technology, which would allow her to complete an electronic ballot and submit it electronically from home without assistance. Because Ms. Rivero has no ability to use her hands, she cannot privately and independently access the current AVBM program or any other option for voting from home available in Massachusetts.

10.     Plaintiff James Wice is a registered voter who resides in Boston, Massachusetts. Mr. Wice wants to vote in the 2020 general election privately and independently from home by participating in the AVBM program. He is a C4/5 quadriplegic from a spinal cord injury who is at high risk for serious complications if he were to contract COVID-19.  With function in his shoulders and biceps, Mr. Wice is able to use the tightness in his hands, in combination with splints with cuffs on his hands and wrists, to utilize utensils and other adaptive equipment. Because of his very limited manual dexterity, Mr. Wice cannot privately and independently access the current AVBM program or any other option for voting from home available in Massachusetts.

11.     Plaintiff Tanja Milojevic is a registered voter who resides in Peabody, Massachusetts. Ms. Milojevic wants to vote in the 2020 general election privately and independently from home by participating in the AVBM program. Because she is blind, Ms. Milojevic cannot privately and independently access the current AVBM program or any other option for voting from home available.

12.     Plaintiff Cory Kadlik is a registered voter who resides in Natick, Massachusetts. Mr. Kadlik wants to vote in the 2020 general election privately and independently from home by participating in the AVBM program. Because Mr. Kadlik is blind, he cannot privately and

independently access the current AVBM program or any other option for voting from home available in Massachusetts.

13.     Plaintiff Boston Center for Independent Living is a 501(c)(3) non-profit organization in Boston, Massachusetts that has provided services to people with disabilities since 1974, when it became the second independent living center in the country. The organization was created by people with disabilities seeking full integration into society. BCIL accomplishes this by empowering people of all ages with a wide range of disabilities with the practical skills and self-confidence to take control over their lives and become active members of the communities in which they live. Over 4,000 people annually receive BCIL services. At the same time, BCIL engages in advocacy and community organizing to promote access and change within society. In addition to having a membership of approximately 500 people, approximately 70% of BCIL's staff and board are people with disabilities. BCIL brings this Complaint on behalf of itself and its members with print disabilities who cannot effectively, privately, or independently vote by mail during the 2020 general election if Defendants do not address the accessibility barriers of the Commonwealth's current AVBM program.

14.     Plaintiff Bay State Council of the Blind is the Massachusetts state affiliate of the American Council of the Blind, and the leading consumer and advocacy organization of people with visual impairments in Massachusetts. BSCB is a membership organization of approximately 220 blind, visually impaired, and sighted individuals committed to an enhanced quality of life for Massachusetts' blind and visually impaired residents. BSCB is headquartered in Watertown, Massachusetts. BSCB works to improve access for people who are blind or visually impaired in many areas of life, including voting, employment, education, rehabilitation, technology access, transportation, and civil rights. Representatives of BSCB have provided testimony at public

hearings and engaged in other advocacy work related to the ADA and other disability-related legislation, including the legislation that gave rise to the Act. BSCB brings this Petition on behalf of itself and its members who cannot effectively, privately, or independently vote by mail during the 2020 general election if Defendants do not address the accessibility barriers of the Commonwealth's current AVBM program.

15.     Defendant Department of the State Secretary, created by the laws of Massachusetts, is the Commonwealth agency responsible for implementation of state law concerning primaries and elections and promulgates regulations and rules related to election related requirements and processes. *See, e.g.,* M.G.L. c. 9, § 2; 950 CMR 47; 950 CMR 51; 950 CMR 57. This responsibility includes ensuring that Massachusetts elections operate in conformity with state and federal disability antidiscrimination law, including Article 114 of the Massachusetts Constitution, the Massachusetts Equal Rights Amendment (MERA), G.L. c. 93, § 103, Title II of the ADA, and Section 504.

16.     Defendant William Francis Galvin is the Secretary of the Commonwealth of Massachusetts, head of the Department of the State Secretary, and is being sued in his official capacity. The Secretary is responsible for overseeing elections in Massachusetts and is ultimately responsible for implementation of the Act. Acts of 2020, Chapter 115.

## IV.     FACTUAL BACKGROUND

### A.     Risks of Voting During the Covid-19 Pandemic

17.     The 2020 general election comes when Massachusetts – like the rest of the country – remains in the dangerous and unpredictable grips of COVID-19. The Commonwealth's state of emergency first declared on March 10, 2020 remains in effect. *See* Exec. Order No. 591.

18.     Despite a series of Executive Orders since then placing restrictions on residents,

businesses, and public entities alike,[2] Massachusetts has now had over 130,400 positive COVID-19 cases and suffered over 9,200 total deaths among confirmed COVID-19 cases, with newly reported confirmed cases continuing to come in by the hundreds.[3]

19.     The best way to prevent the spread of COVID-19 is to avoid exposure to it.[4] Thus, aside from staying at home and avoiding crowds, key infection control measures include wearing face coverings and maintaining a distance of six feet from others while out in the community. Strict observance of these practices is all the more important for people who are elderly, those who have medical conditions that place them at risk of serious illness or death if they contract COVID-19, and individuals who live with, care for, or otherwise routinely interact with people in high-risk groups.[5]

20.     CDC guidance updated on September 21, 2020 indicates that COVID-19 spreads "through respiratory droplets produced when an infected individual coughs, sneezes, sings, or talks…The virus that causes COVID-19 is spreading very easily and sustainably between people."[6]  Moreover, it is often unclear who is infected. "The CDC has cautioned for some time that even asymptomatic individuals may be infected with COVID-19 and spread the virus" and "asymptomatic spreaders have been called the "Achilles' heel" of prevention strategies."[7] *See* Savino v. Souza, No. CV 20-10617-WGY, 2020 WL 2404923, at *5 (D. Mass. May 12,

---

[2] *See generally* COVID-19 State of Emergency – Updates, emergency orders, and guidance associated with the COVID-19 State of Emergency, https://www.mass.gov/ info-details/covid-19-state-of-emergency.
[3] Massachusetts Department of Public Health COVID-19 Dashboard, October 1, 2020, https://www.mass.gov/doc/covid-19-dashboard-october-1-2020/download.
[4] Centers for Disease Control and Prevention ("CDC"), *Coronavirus Disease 2019 (COVID-19): How to Protect Yourself & Others* (September 11, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html.
[5] *See* CDC, *People with Certain Medical Conditions* (Updated September 21, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.
[6] CDC, *How COVID-19 Spreads* (Updated September 21, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html.
[7] Monica Gandhi, Deborah S. Yokoe, & Diane V. Havlir, M.D., *Asymptomatic Transmission, the Achilles' Heel of Current Strategies to Control Covid-19,* New England J. of Medicine (Apr. 24, 2020), https://www.nejm.org/doi/10.1056/NEJMe2009758.

2020) (citations omitted).

21.     The dangers posed by COVID-19 inside polling places, where people must congregate in order to exercise their right to vote, are real.[8]  Many voters with disabilities must also take public transportation or ride shares in order to get to polling places.[9]

22.     Many voters with print disabilities, like Plaintiffs, must utilize an AutoMARK voting machine in order to complete ballots without assistance at their polling place, which brings with it additional risks related to COVID-19.[10]

23.     For blind voters like Plaintiffs Milojevic and Kadlik, this process can necessarily involve a considerable amount of touching to navigate the temporary set up of the polling site and voting equipment. For instance, there may be physical contact with poll workers and common surfaces when they are directed where to collect their ballot, escorted to AutoMark, put on the headset used by other voters, touch the AutoMARK to navigate through the ballot, and escorted back to the table to turn in the ballot. Blind voters may also be subjected to other unnecessary and inappropriate close contact, such having a poll worker hover near and watch while the voter completes the ballot on the AutoMARK, as Plaintiff Kadlik experienced during the 2020 primary. Notably also, many voters who utilize the AutoMARK will not have the physical ability to observe safety measures put in place to support social distancing, such as

---

[8] *See, e.g.*, DeWitt, de St. Maurice, & Rios, Voting and Infection Prevention of COVID-19, The UCLA Voting Rights Project (Apr. 1, 2020), https://latino.ucla.edu/wpcontent/uploads/2020/04/UCLA-VBM-Health-Safety-Report-2.pdf.

[9] *Id.*

[10] Per Defendants' website, in light of "federal law and state requirements mandat[ing] that voting systems be equipped for voters with disabilities allowing such voters to have the same opportunity to vote privately and independently. . . every precinct must have at least one accessible voting machine available." In Massachusetts polling places, AutoMARK Voter Assist Terminals are utilized. "The AutoMARK Voter Assist Terminals are marking devices that use audio cue capacity for visually impaired voters." The AutoMARK also allows for the ballot to be magnified or displayed in high contrast and can "produce an oral report to the voter as the choices selected prior to the voter printing the ballot." Secretary of the Commonwealth of Massachusetts, *Voting for Persons with Disabilities* – Accessible Voting Equipment, https://www.sec.state.ma.us/ele/eleaccessible/accessibleidx.htm,

stickers or taped lines on the ground.[11]

24.     Voters with mobility/dexterity disabilities, like Plaintiffs Rivero and Wice, may face similar safety issues accessing poll sites during the pandemic. Wheelchair users may not be able to maintain a six-foot distance from other voters and staff at polling sites that are not set up with wheelchairs in mind. Voters who cannot complete the paper ballot due to mobility/dexterity disabilities are also supposed to have the option to use the AutoMARK via a sip/puff tube connected to the machine in order to vote privately and independently, which must be provided by the polling place, but is not always in practice. Regardless, use and sterilization of a communal sip/puff tube obviously poses significant safety and infection control concerns.

**B.     Absentee Voting Program for Massachusetts Citizens Who Are in the Military, Live Overseas, or Meet Other Special Conditions**

25.     Per Defendants, the absentee voting program is available in Massachusetts for all elections for voters who are deemed to qualify to receive the ballot.

26.     According to Defendants' website, the following categories of people should complete an absentee ballot application: a military voter on active duty or a dependent family member of active duty personnel protected by UOCAVA; a Massachusetts citizen residing outside of the United States; a voter who has been admitted to a hospital within one week of the election; a voter who has been quarantined within one week of the election; and a voter who is incarcerated.[12]

27.     Massachusetts is not among that many states that provides excuse-free absentee voting or access to absentee voting relating to the risk of serious complications if the voter is

---

[11] Even before the public health crisis, voter turnout rates among voters with disabilities has been lower that voters without disabilities. Schur & Kruse, *Fact sheet: Disability and Voter Turnout in the 2018 Elections*, Rutgers Sch. of Mgmt. & Labor Relations (July 2019), https://smlr.rutgers.edu/sites/ default/files/2018disabilityturnout.pdf. As voter turnout among people without disabilities in Massachusetts increased from 47.5% to 56.5% between the 2014 and 2018 midterm elections, people with disabilities went from 42.3% to 47.8%. Id.

[12] Secretary of the Commonwealth, *Absentee Voting*, https://www.sec.state.ma.us/ele/eleabsentee/absidx.htm.

infected with COVID-19.

28.     An application to vote absentee must be made in writing and can be submitted via mail, email, or fax. Per the Secretary's website, the application can be in the form of the Massachusetts Absentee Ballot Application form available as a PDF for download on the Secretary's website, or, in the alternative, a letter requesting an absentee ballot. UOCAVA voters may also use the Federal Post Card Application.

29.     All applications must be signed. For emailed applications, the website provides the following details concerning the signature requirement:

> [Y]ou may either scan or take a photo of your signed application and email it to your local election office, or you may sign your application using a mouse, finger, or stylus and email the completed and signed attachment. Typed signatures are not acceptable.[13]

30.     Once approved, the voter residing in Massachusetts can receive the paper absentee ballot by mail or, in the case of emergency absentee ballots, via delivery by a person the voter designates in his or her application. Voters can return the paper absentee ballots by mail or delivery to local election officials or put them in ballot drop box.

31.     There is no accessible electronic absentee ballot available as part of Massachusetts' absentee voting program.

32.     Approved UOCAVA voters can choose to receive their absentee ballot by email, fax, or mail from Defendants for federal elections. For city and town elections, UOCAVA voters receive the ballot by mail. UOCAVA ballots Defendants email to voters are accompanied by an electronic Absentee Ballot Affidavit that calls for voters to affirm under the penalties of perjury, essentially, that they are a qualified UOCAVA voter; are not voting in any other U.S. jurisdiction; have voted and sealed the ballot in private, absent assistance needed from a person

---

[13] *Id.*

specifically designated on the form on account of a disability or language barrier, and have not

been influenced; and their personal information in the affidavit is true and complete to the best of

their knowledge.

33.     UOCAVA voters are permitted to return the absentee ballots via email, fax, or

mail to Defendants in every type of election without exception – federal, state, city, and town

elections.

34.     UOCAVA voters who do not receive a Massachusetts absentee ballot in time, or

have not even applied to Defendants to vote absentee, also have the option of submitting a

Federal Write-in Absentee Ballot by email or fax to Defendants.

### C.      Expanded Vote by Mail Created by the Act

#### 1.      *Access to Vote by Mail for All for the 2020 Elections in the Interest of Public Health and Convenience*

35.     "An Act Relative to Voting Options in Response to COVID-19" became law on

July 6, 2020 and established the right of all registered Massachusetts voters to cast ballots by

mail in both the 2020 primary and general elections. See Acts of 2020, Chapter 115, §§ 6(b), 10,

15, 16, 17.

36.     The Legislature incorporated the following into the first paragraph of the Act, in

recognition of the purpose and urgency of its implementation:

> The deferred operation of this act would tend to defeat its purpose, which is to
> forthwith provide for increased voting options in response to COVID-19,
> therefore it is hereby declared to be an emergency law, necessary for the
> immediate preservation of the public health and convenience.

#### 2.      *Statutory Language Guaranteeing Access to Vote by Mail for Voters with Disabilities*

37.     The Legislature made specific provision for the needs of voters with disabilities,

like Plaintiffs. Per Section 6(i), "a voter wishing to apply to vote early by mail in the primary or

general election and who needs accommodation by reason of disability may request such accommodation from the state secretary." *Id.* at § 6(i). After the Secretary receives information from the voter "pursuant to the application in this section either by phone or electronically," the Secretary "shall grant accommodations to the voter." *Id.*

38.     The Act requires that the accommodations that the Secretary shall grant:

> [s]hall include, but not be limited to: (i) clear and electronic accessible instructions for completion, printing and returning of the ballot; (ii) an authorized accessible blank electronic ballot that can be filled out electronically, printed and signed; provided, however, that the accessible electronic ballot marking system the voter utilizes to access their blank electronic ballot shall not collect or store any personally identifying information obtained in the process of filling out the ballot; (iii) an envelope to return the ballot to the voter's town or city clerk; and (iv) hole punched markers in place of a wet signature required for certification.

*Id.* at § 6(i)(ii). The Act further states that the voter with accommodations may then return the ballot by  delivering or mailing it to the office of the appropriate city or town clerk or dropping it in a secured municipal drop box. *Id.* at § 6(i).

### D.     Implementation of Vote by Mail in Massachusetts

#### 1.     *Access to Vote by Mail for the 2020 Primary*

39.     Following passage of the Act, the Secretary mailed a Vote By Mail Application to every person who was registered to vote in Massachusetts – all 4.5 million – in July to ensure that they would have the option to receive a paper ballot to complete at home.[14]

40.     On August 21, 2020, the Disability Law Center filed an Emergency Petition with the Supreme Judicial Court of Massachusetts – *Charlson, et al., v. Secretary of the Commonwealth*, No. SJ-2020-0588 – on behalf of six individual Plaintiffs, Bay State Council of

---

[14] *See* Secretary of the Commonwealth of Massachusetts, *COVID-19 Elections Update – Voting by Mail*, https://www.sec.state.ma.us/ele/covid-19/covid-19.htm; Van Buskirk, *SJC Case To Be Dismissed If Galvin Finishes Sending Mail-In Ballot Applications By Tuesday* (July 17, 2020), https://www.wbur.org/news/ 2020/07/17/sjc-case-galvin-vote-mail-ballot-applications.

the Blind (BSCB), and the Boston Center for Independent Living (BCIL) concerning the
unavailability of accessible electronic vote by mail for September 1, 2020 primary.

41.     At the time of filing, Defendants Galvin's office had not provided the public with
any information concerning the availability of accessible electronic vote by mail or the process
for requesting access to it as an accommodation. In addition, it was only on the date of filing that
Defendant Galvin's office signed a contract with VotingWorks to provide the electronic ballot
marking platform for Massachusetts' AVBM program.

42.     Within days of the Emergency Petition being filed, the Defendant Galvin's office
established an AVBM Coordinator position and, on August 26, 2020, the Supreme Judicial Court
entered a Judgment based on an agreement between the parties establishing an extended deadline
for submission of requests for accommodations and accompanying applications to vote by mail
as part of the AVBM program, as well as special processes to allow voters with disabilities to
access an electronic ballot for the September 1, 2020 primary.

43.     The special processes incorporated into the Judgment included creation of a
screen reader-accessible affirmation similar to the Absentee Ballot Affidavit form used by
UOCAVA voters as a substitute for the affirmation requiring signature on the vote by mail ballot
envelope provided by election officials and permission for voters utilizing the electronic ballot to
return their printed ballots and the accessible affirmation of compliance using the personal
envelopes and postage in recognition that the formal envelopes may not arrive in time.

44.     On August 27, the Court allowed the Parties' Joint Motion to Amend the first
judgment to clarify that typed signatures on the applications to vote by mail were permissible for
individuals not able to independently insert an electronic hand-drawn signature.

### 2.     *Massachusetts Primary Turnout*

45.     With the combination of vote by mail, early in-person voting, and in-person

voting on September 1, 2020, Massachusetts had a record turnout of 1.7 million voters during the

primary election.[15]  While it is unclear how many of the final ballot tally were mailed in, as of

August 30, 2020, "election officials statewide received more than 768,000 Democratic ballots

and more than 88,000 Republican ballots statewide, most of which were mail-in ballots."[16]

46.     By contrast, only 14 persons with print disabilities were approved by the

Defendants to use the AVBM program. Eight additional voters attempted to gain access, but

were not provided access to the electronic ballot after their requests were deemed incomplete by

Defendants.

47.     At least three of the 14 people granted access to the AVBM program – Plaintiffs

Rivero, Wice, and Kadlik – were not able to successfully complete the current process the

AVBM program requires to cast their votes.

### 3.     *AVBM for the General Election*

48.     Defendants recently updated website information indicates that the AVBM

program is operating again in the general election.[17]

49.     For the general election, Defendants will not provide voters with print disabilities

approved to participate in the AVBM program an accessible electronic affirmation to substitute

for the affirmation printed on the ballot envelope. Accordingly, voters who are blind, like

---

[15] Lisa Kashinsky, *Massachusetts primary sets turnout record with vote-by-mail expansion amid coronavirus*, Boston Herald (September 9, 2020), https://www.bostonherald.com/2020/09/09/massachusetts-primary-sets-turnout-record-with-vote-by-mail-expansion-amid-coronavirus/.

[16] Steph Solis, *Massachusetts primary drew 1.7 million voters, breaking 1990 turnout record in first major election with new vote-by-mail law*, MassLive (September 9, 2020), https://www.masslive.com/politics/2020/09/massachusetts-primary-drew-17-million-voters-breaking-1990-turnout-record-in-first-major-election-with-new-vote-by-mail-law.html.

[17] Secretary of the Commonwealth, *Accessible Vote by Mail*, https://www.sec.state.ma.us/ele/eleev/early-voting-by-mail-accessible.htm.

Plaintiffs Milojevic and Kadlik, or have low vision will not be provided an accessible format of the affirmation that they are required to sign under the penalties of perjury when submitting their AVBM program ballots.

50.     Other than the unavailability of the accessible affirmation, the process voters must complete in order to receive the benefit of the AVBM program is the same as that which Defendants required in the primary.

**E.     Massachusetts' AVBM Program Is Inaccessible to Many of the Registered Voters It Is Meant to Accommodate**

51.     Defendants have put in place a process for the AVBM program that is not accessible to Plaintiffs Rivero, Wice, Milojevic, and Kadlik, members and clients of BCIL, members of BSCB, and other voters with print disabilities.

52.     Once a voter goes through the process of getting approval to receive an accessible electronic ballot and completes it privately and independently in a web browser on their computer, tablet, or smart phone through the VotingWorks platform using their personal assistive technology and devices, the voter must then complete the following steps:

    a.   Print the electronic ballot and visually verify that the printout is correct;

    b.   Physically remove the printed electronic ballot from the printer;

    c.   Locate the large, outer envelope sent to the voter's address, which contains the internal ballot envelope, and postage paid return envelope;

    d.   Open the outer envelope and remove the internal ballot envelope;

    e.   Place the printed and signed electronic ballot inside the ballot envelope;

    f.   Locate the hole punch that is supposed to be on the ballot envelope to indicate the location of the signature line;

    g.   Add the voter's signature by hand to <u>swear under the penalties of perjury</u> that the voter: (1) is registered in Massachusetts; (2) will not cast a ballot in another location; (3) and that the information written on the envelope is true;[18]

    h.   Seal the ballot envelope, place it inside the return envelope, and seal the return envelope; and

    i.   Place the return envelope in the mail or drop it off with local election officials or at a designated drop box.

53.    The process is replete with barriers for voters with print disabilities, making the AVBM program impossible for many to complete without assistance from a third party, preventing them from voting privately and independently.

54.    Foreseeable barriers for a blind voter, like Plaintiffs Milojevic and Kadlik, in accomplishing the above tasks without assistance may include that he or she: cannot verify that the printed ballot is correct without assistance; has difficulty locating the two envelopes; cannot read the statement printed on the ballot envelope to which he or she must attest under the penalties of perjury; and has difficulty with the placement and legibility of an attempted hand-drawn signature on the ballot envelope.

55.    Foreseeable barriers for voters with mobility/dexterity disabilities, like Ms. Rivero and Mr. Wice, in accomplishing the above tasks without assistance may include that he or she: cannot remove the printed electronic ballot from the printer and place it inside the ballot envelope; cannot hand-draw a signature on the ballot envelope without great difficulty or at all; and cannot place the ballot envelope inside of the return envelope or seal either envelope.

56.    Notably, at no part of the in-person voting process are any voters required to produce a hand-drawn signature in order to cast their vote at their polling place.

---

[18] Notably, there are three lines on the ballot envelope that call for the following, in descending order: (1) the voter's signature; (2) the voter's printed name; and (3) the voter's "home address (where registered)."  In spite of the three lines and the content of the affirmation under the penalties of perjury, only the top line is marked with a hole punch.

57.     Additionally, a clear barrier for all voters trying to access the AVBM program is the requirement that they have a working printer. Having a printer at home is by no means the norm. Printers and ink cartridges can be costly, especially depending on one's income. Printers are also subject to failure, as experienced by Plaintiffs Rivero and Plaintiff Wice in the primary. Voters with print disabilities should not be forced to shoulder a financial burden of purchasing a printer in order to have access to the universal vote by mail program created to mitigate the dangers of voting during the COVID-19 pandemic.

58.     The effective requirement that voters with print disabilities must get assistance from third parties in order to participate in the AVBM program is incompatible with their rights to equal access to the remote voting options available to all voters in Massachusetts. It also creates a system in which voters with print disabilities will be faced with the possibility that their assistant has added unwanted marks to their ballot or fails to follow the correct steps for the ballot to be counted.

> **1.     Defendants Will Not Permit Electronic Submission of the Accessible Electronic Ballot for Massachusetts Voters with Print Disabilities**

59.     The Legal Counsel and Director of the Elections Division of the Department of the State Secretary has stated publicly that electronic submission is not a possibility for the Commonwealth's AVBM program due to the language of the Act, stating that Defendants must provide an accessible electronic ballot that can be filled out electronically, printed and mailed. *See* Acts of 2020, Chapter 115, § 6(i).

60.     Defendants' website concerning the AVBM program also explicitly states that "[t]he law requires all ballots must be printed and does not allow for ballots to be returned electronically."

61.     Defendants' website concerning the AVBM program indicates that the printed

electronic ballot must be mailed or dropped off with a "signed affidavit of compliance." The affidavit of compliance is printed on the outside of the ballot envelope and requires application of a signature by hand.

62. For purposes of requesting access to AVBM as an accommodation, Defendants' website indicates that a signature on the Vote by Mail application is required, but voters may use a typed signature if they include a statement that they cannot insert a hand-drawn signature as a result of their disability. Despite this recognition that a hand-drawn signature may not be possible for voters seeking access to the AVBM program, there is no option for providing a typed signature or other accessible form of identification to complete the requisite affirmation under the penalties of perjury that currently appears on the ballot envelope.

      **2.**     ***Making UOCAVA Email Procedures Available to Massachusetts Voters with Print Disabilities Would Be a Reasonable Accommodation Under Federal Law***

63. As discussed above, the separate absentee voting program for UOCAVA voters permits submission of a completed ballot via email.

64. Permitting registered voters residing in Massachusetts who have been individually approved for access to an accessible electronic ballot is equally as safe as allowing thousands of overseas citizens and military personnel and their dependents to do so.

65. In addition, allowing email submission of the electronic ballots already available can be accomplished with little or no additional cost to Defendants.

## V.     CLAIMS FOR RELIEF

### <u>COUNT I</u>

**Violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131–12134**

66. Plaintiffs incorporate the allegations of each preceding and succeeding paragraph as if fully set forth herein.

67.     The purpose of the ADA is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

68.     Title II of the ADA guarantees qualified individuals an equal opportunity to access the benefits of the services, programs, or activities of a public entity. 42 U.S.C. § 12132.

69.     Title II mandates that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.*

70.     Plaintiffs Rivero, Wice, Milojevic, and Kadlik, BCIL members and clients, and BSCB members are qualified individuals with a disability within the meaning of Title II and Title III of the ADA. *See* 42 U.S.C. §§ 12131(2), 12102(2); 28 C.F.R. § 35.108.

71.     In providing aids, benefits, or services, public entities may not "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," nor may public entities provide qualified individuals with disabilities "an aid, benefit, or service that is not as effective in affording equal opportunity" to gain the same result or benefit as provided to others. 28 C.F.R. § 35.130(b)(1)(ii)-(iii).

72.     Public entities must make reasonable modifications to their policies, practices, and procedures when necessary to avoid discrimination against individuals with disabilities. *Id.* § 35.130(b)(7)(i).

73.     Furthermore, public entities "shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with

disabilities are as effective as communications with others," and "shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." *Id.* § 35.160.

74. In determining what type of auxiliary aid and service is necessary, "a public entity shall give primary consideration to the requests" of the individual with disabilities. 28 C.F.R. § 35.160(b)(2).

75. To be effective, "auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." *Id.* § 35.160(b)(2).

76. Auxiliary aids and services include "screen reader software; magnification software; optical readers; … accessible electronic and information technology; or other effective methods of making visually delivered materials available to individuals who are blind or have low vision." *Id.* § 35.104.

77. Plaintiffs Rivero, Wice, Milojevic, and Kadlik, along with other members of BSCB and BCIL are registered to vote in Massachusetts and intend to vote in the 2020 general election, and are qualified to receive voting services from and participate in the voting programs provided by Defendants. They are likewise entitled to the protections afforded under the ADA. *See* 42 U.S.C. § 12131(2).

78. Defendant Galvin heads the Defendant Department of the State Secretary. Defendant Department of the State Secretary is a public entity subject to Title II of the ADA. *See* 42 U.S.C. § 12131(1).

79.     All remote voting options, including vote by mail and the AVBM program, constitute a service , program, or activity provided by Defendants.

80.     Defendants' AVBM program discriminates against Plaintiffs and other voters with print disabilities because they cannot vote privately and independently by remote means, while other voters can.

81.     Defendants have failed to provide Plaintiffs and other voters with print disabilities an opportunity to vote from the safety of their own homes during the COVID-19 pandemic that is equal to the opportunity provided to other voters that do not have disabilities.

82.     Defendants could make reasonable modifications to the AVBM program that would grant Plaintiffs and others with print disabilities meaningful access in the form of offering electronic submission of electronic ballots and permitting accessible forms of identification in lieu of a hand-drawn signature.

83.     Defendants have failed to afford Plaintiffs and other voters with print disabilities auxiliary aids and services necessary to afford them effective communication in and meaningful access to the AVBM program.

84.     Defendants have excluded and continue to exclude Plaintiffs and other voters with print disabilities from private and independent participation in, and denied them the benefits of, or otherwise discriminated against them in its AVBM program.

85.     As a result of Defendants' actions and inactions, Plaintiffs and those similarly situated have suffered and will continue to suffer irreparable harm. They have suffered and continue to suffer from discrimination and unequal access to Defendant's programs, services, or activities. In the absence of injunctive relief, Plaintiffs and those similarly situated will be denied

their right to vote privately and independently from home like all other registered Massachusetts voters who may do so with the addition of universal vote by mail for the 2020 elections.

86.     In light of COVID-19, Plaintiffs and other voters with print disabilities are at imminent risk of irreparable harm absent injunctive relief that would permit private and independent completion of the AVBM program process. Many individuals with print disabilities do not have assistance in their homes or the necessary equipment – a reliable printer – to complete the existing process. For that reason, Defendants' actions and inactions may prevent such individuals from voting in the upcoming general election.

87.     Without these accommodations, Plaintiffs and other individuals with print disabilities will face the unconscionable choice of either risking their health to vote at the closest polling place or staying home and foregoing the right to vote privately and independently by seeking third-party assistance if available, or, if it is not, the right to vote entirely.

88.     Defendants' failure to meet their obligations to provide voters with print disabilities an equal opportunity to vote from home during the 2020 general election is an ongoing violation of the ADA and its implementing regulations. Absent a court order, Defendant will continue to violate the ADA and inflict irreparable injuries for which Plaintiffs have no adequate remedy at law.

## COUNT II

### Violation of Section 504 of the Rehabilitation Act of 1973 29 U.S.C. § 794 *et seq.*

89.     Plaintiffs hereby incorporate the allegations in each preceding and succeeding paragraph as though fully set forth herein.

90.     The purpose of Section 504 is to ensure that no "qualified individual with a disability in the United States…shall, solely by reason of his or her disability, be excluded from

the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance….” 29 U.S.C. § 794(a).

91.     Plaintiffs Rivero, Wice, Milojevic, and Kadlik, BCIL members and clients, and BSCB members are individuals with disabilities who are registered and eligible to vote and, thus, are protected by Section 504. 29 U.S.C. § 705(20).

92.     Defendant Department of the State Secretary is an agency of the Commonwealth of Massachusetts, of which Defendant Galvin is the head, and receives federal financial assistance. Thus, Defendants are subject to the requirements of Section 504. *See* 29 U.S.C. § 794.

93.     Section 504 defines “program or activity” to include “all of the operations of a department, agency, special purpose district, or other instrumentality of a State or of a local government” or “the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government.” *Id.* § 794(b)(1).

94.     Such federally funded entities may not, in providing aids, benefits, or services, “[d]eny a qualified handicapped person the opportunity accorded others to participate in the program or activity receiving Federal financial assistance.” 28 C.F.R. § 42.503(b)(1)(i).

95.     The DOJ regulations implementing Section 504 clarify the requirements for Federal financial recipients, stating: “A recipient that employs fifteen or more persons shall provide appropriate auxiliary aids to qualified handicapped persons with impaired sensory, manual, or speaking skills where a refusal to make such provision would discriminatorily impair or exclude the persons in the program receiving federal financial assistance.” 28 C.F.R. § 42.503(f).

96.     All remote voting options, including vote by mail, constitute a service, program, or activity provided by Defendants.

97.     Defendants have failed and continue to fail to meet their obligations to provide voters with print disabilities meaningful access to vote that is equal to the opportunity provided to other voters.

98.     In doing so, Defendants refuse to provide an auxiliary aid or service that would allow Plaintiffs equal access to vote.

99.     Accordingly, Defendants have discriminated and continue to discriminate against Plaintiffs and others with print disabilities.

100.    As a result of Defendants' actions, Plaintiffs have suffered and will continue to suffer irreparable harm; they have suffered and continue to suffer from discrimination and unequal access to Defendants' program, service, or activity of voting privately and independently from the safety of home like other registered Massachusetts voters who may do so with the addition of universal vote by mail for the 2020 elections.

101.    Options for making the current AVBM program fully accessible to permit voters with print disabilities the opportunity to vote privately and independently are readily available to Defendants and constitute reasonable accommodations.

102.    In the absence of injunctive relief, Defendants will continue to deny Plaintiffs their right to vote privately and independently from the safety of their homes in the 2020 general election.

103.    Unless the requested relief is granted, Plaintiffs will suffer irreparable harm in that they will be discriminated against and denied equal access to the fundamental right to vote.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that this Court:

a.  Adjudge and decree that Defendants, by the programs, services, systems, policies, practices, and conditions described above, have violated and continue to violate Title II of the ADA and Section 504 of the Rehabilitation Act;

b.  Enjoin Defendants from violating the ADA and Section 504 and require Defendants to implement an AVBM program that provides Plaintiffs and other voters with print disabilities the opportunity to vote privately and independently by permitting electronic submission of accessible electronic ballots with an accessible electronic affirmation that can be completed using accessible forms of identification, in lieu of a hand drawn signature;

c.  Award  reasonable attorney's fees and costs; and

d.  Award Plaintiffs such other and further relief as the Court may deem just and proper.


Dated: October 2, 2020                              Respectfully submitted,


                                                    _/s/ Tatum A. Pritchard_____
                                                    Tatum A. Pritchard
                                                    BBO # 664502
                                                    tpritchard@dlc-ma.org
                                                    Thomas Murphy
                                                    BBO # 630527
                                                    tmurphy@dlc-ma.org
                                                    Matthew Steele
                                                    BBO # 676711
                                                    msteele@dlc-ma.org
                                                    Disability Law Center
                                                    11 Beacon St., Suite 925
                                                    Boston, MA 02108
                                                    617-723-8455