UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BARBARA RIVERO, JAMES WICE, TANJA
MILOJEVIC, CORY KADLIK, BOSTON
CENTER FOR INDEPENDENT LIVING, and
BAY STATE COUNCIL OF THE BLIND,

    Plaintiffs,

    v.

WILLIAM FRANCIS GALVIN, in his Official
Capacity as Secretary of the Commonwealth of
Massachusetts, and the DEPARTMENT OF THE
STATE SECRETARY,

    Defendants.

C.A. No. 1:20-cv-11808

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................. 1

STATEMENT OF FACTS ................................................................................................ 2

I.      RISKS OF VOTING DURING THE COVID-19 PANDEMIC ........................................ 2

II.     EXPANDED VOTE BY MAIL CREATED FOR THE 2020 ELECTIONS .................... 4

III.    EXPERIENCES OF THE INDIVIDUAL PLAINTIFFS AND THEIR NEED FOR A
        FULLY ACCESSIBLE AVBM PROGRAM FOR THE GENERAL ELECTION .......... 6

IV.     REASONABLE MODIFICATIONS TO PERMIT PLAINTIFFS MEANINGFUL
        ACCESS TO THE AVBM PROGRAM ARE AVAILABLE ........................................... 9

ARGUMENT ................................................................................................................. 10

I.      A PRELIMINARY INJUNCTION SHOULD BE ISSUED TO ENSURE PLAINTIFFS
        CAN PRIVATELY AND INDEPDENTLY CAST AN ACCESSIBLE ELECTRONIC
        BALLOT IN THE 2020 GENERAL ELECTION .......................................................... 10

        A.  Plaintiffs Are Likely to Succeed on their Claims that the ADA and Section 504
            Require an Accessible AVBM program. ...................................................... 12

        B.  Plaintiffs Will Suffer Irreparable Harm If They Must Forego Voting Privately and
            Independently in the 2020 General Election. ............................................... 16

        C.  The Balance of Hardships Tips in Plaintiffs' Favor. .................................... 17

        D.  Accessible Voting for Plaintiffs and Other Voters with Print Disabilities is in the
            Public Interest. ............................................................................................ 18

II.     THE COURT SHOULD WAIVE BOND ...................................................................... 19

CONCLUSION ............................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

*American Council of the Blind v. Paulson*, 525 F.3d 1256 (D.C. Cir. 2008) .............................. 18

*Aquino v. Suiza Dairy, Inc.,* 563 U.S. 1001 (2011) ...................................................... 20

*Ayers-Schaffner v. DiStefano*, 37 F.3d 726 (1st Cir. 1994) ........................................... 1

*Burdick v. Takushi*, 504 U.S. 428 (1992) .................................................................. 1

*California Council of the Blind v. Cty. of Alameda*, 985 F. Supp. 2d 1229 (N.D. Cal. 2013) 11, 18

*Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151 (1st Cir. 2004) ...................... 19

*Clarkson Co. v. Shaheen*, 544 F.2d 624 (2d Cir.1976) ................................................... 23

*Corp. Techs., Inc. v. Harnett*, 731 F.3d 6 (1st Cir. 2013) .............................................. 12

*Crowley v. Local No. 82, Furniture & Piano Moving, Furniture Store Drivers, Helpers, Warehousemen, & Packers*, 679 F.2d 978 (1st Cir. 1982) ............................................... 23

*CVS Pharmacy, Inc. v. Lavin*, 951 F.3d 50 (1st Cir. 2020) .................................... 12, 20

*Democracy NC v. NC State Bd. of Elections*, 2020 WL 4484063 (M.D.N.C. Aug. 4, 2020) ...... 21

*Devine v. State of Rhode Island*, 827 F. Supp. 852 (D.R.I. 1993) ................................. 19

*Disabled in Action v. Bd. of Elections in City of NY*, 752 F.3d 189 (2d Cir. 2014) ..................... 17

*Doe v. Mass. Dep't of Corr.*, 2018 WL 2994403 (D. Mass. June 14, 2018) .............................. 15

*Doe v. Rowe*, 156 F. Supp. 2d 35 (D. Me. 2001) ....................................................... 14

*Firecross Ministries v. Municipality of Ponce,* 204 F.Supp.2d 244 (D.P.R. 2002) ..................... 20

*Hagopian v. Dunlap,* 2020 WL 4736460 (D.Me. August 14, 2020) ............................................ 23

*Harman v. Forssenius*, 380 U.S. 528 (1965) ............................................................. 19

*Haskins v. Stanton*, 794 F.2d 1273 (7th Cir. 1986) ...................................................... 20

*League of Women Voters of NC v. NC,* 769 F.3d 224 (4th Cir. 2014) .................................. 19, 22

*Ligotti v. Garofalo,* 562 F.Supp.2d 204 (D.N.H.2008) ................................................... 24

*Nat'l Ass'n of the Deaf v. Harvard Univ.*, 2016 WL 3561622 (D. Mass. Feb. 9, 2016) ............. 16

*Nat'l Fed'n of the Blind, Inc. v. Lamone*, 2014 WL 4388342 (D. Md. Sept. 4, 2014) ........... 19, 22

*Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494 (4th Cir. 2016) ............................. 11, 15, 16, 17

*Obama for Am. v. Husted*, 697 F.3d 423 (6th Cir. 2012) ........................................................ 19, 22

*Ocasio v. Comision Estatal De Elecciones*, 2020 WL 5530274 (D.P.R. September 14, 2020) ... 22

*Parker v. Universidad de Puerto Rico*, 225 F.3d 1 (1st Cir. 2000) ........................................ 13, 15

*Pharm. Soc. of State of NY, Inc. v. NY State Dep't of Soc. Servs.*, 50 F.3d 1168 (2d Cir. 1995) .. 23

*Pollack v. Reg'l Sch. Unit 75*, 886 F.3d 75 (1st Cir. 2018) ......................................................... 17

*Powell v. Benson*, Case 2:20-cv-11023-GAD-MJH (E.D. Mich. May 1, 2020) ......................... 21

*Respect Maine PAC v. McKee*, 622 F.3d 13 (1st Cir. 2010) ........................................................ 12

*Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12 (1st Cir. 1996) ...................... 12, 19

*Savino v. Souza*, 2020 WL 2404923 (D. Mass. May 12, 2020) ..................................................... 3

*Taliaferro v. NC State Bd. of Elections*, 2020 WL 5709252 (E.D.N.C. Sept. 24, 2020) .. 12, 19, 24

*Tennessee v. Lane*, 541 U.S. 509 (2004) ..................................................................................... 11

*Theriault v. Flynn*, 162 F.3d 46 (1st Cir.1998) ........................................................................... 13

*Todd ex. rel Todd v. Sorrell*, 841 F.2d 87 (4th Cir. 1988) .......................................................... 21

*Vamos, Concertacion Ciudadana, Inc. v. Commonwealth of Puerto Rico*, 2020 WL 5708729
   (D.P.R. September 24, 2020) ................................................................................................. 21

*VaqueriaTres Monjitas, Inc. v. Fabre Laboy*, 2007 WL 9717645 (D.P.R. July 11, 2007) .......... 20

**Statutes**

29 U.S.C. § 701 ...................................................................................................................... 10, 15

29 U.S.C. § 705 ............................................................................................................................ 13

29 U.S.C. § 794 ...................................................................................................................... 12, 13

42 U.S.C. § 12101 ............................................................................................................... 1, 10, 18

42 U.S.C. § 12102 ........................................................................................................................ 12

42 U.S.C. § 12131 ...................................................................................................................... 12, 13

42 U.S.C. § 12132 ...................................................................................................................... 12, 13

42 U.S.C. §§ 12102 ......................................................................................................... 13

52 U.S.C. § 20301 ............................................................................................................. 9

Acts of 2020, Chapter 115 ................................................................................................ 4

M.G.L. c. 9, § 2 ................................................................................................................. 13

**Regulations**

28 C.F.R. § 35.130 ............................................................................................................ 10

28 C.F.R. § 35.160 ............................................................................................................ 15

28 C.F.R. §§ 35.130 .......................................................................................................... 15

950 CMR 47 ...................................................................................................................... 13

950 CMR 51 ...................................................................................................................... 13

## INTRODUCTION

The right to vote "is of the most fundamental significance under our constitutional structure,'" *Ayers-Schaffner v. DiStefano*, 37 F.3d 726, 727 (1st Cir. 1994), quoting *Burdick v. Takushi*, 504 U.S. 428, 433 (1992). Protecting people with disabilities against discrimination in voting was one of Congress's motivating factors in passing the Americans with Disabilities Act ("ADA"). 42 U.S.C. § 12101(a)(3). Preventing such discrimination also appears to be the motivation behind Massachusetts' new Accessible Vote by Mail ("AVBM") program, a component of the universal vote by mail program created for the 2020 elections due to COVID-19. Unfortunately, the process voters must follow to cast a vote through the AVBM program incorporates a number of foreseeable barriers for the people, like Plaintiffs, whom it was created to accommodate – voters who are blind or have low vision, mobility/dexterity disabilities, or other disabilities that make it difficult or impossible for them to effectively access standard printed text ("print disabilities"). Primary among these barriers is the requirement that the accessible electronic ballot provided by the AVBM program cannot be submitted electronically; it must be printed, accompanied by an affirmation endorsed with a signature applied by hand, and placed within two envelopes before being mailed or delivered to local election officials.

Even before the unprecedented pandemic forced voters to calculate the serious health risks involved in going to the polls, voter turnout rates among voters with disabilities has been lower than that of voters without disabilities.[1] Without a fully accessible AVBM program, voters with print disabilities will be forced to go the polls, to forgo privacy and independence in order to complete the steps required by the AVBM program, or simply not vote.

---

[1] Schur & Kruse, *Fact sheet: Disability and Voter Turnout in the 2018 Elections*, Rutgers Sch. of Mgmt. & Labor Relations (July 2019), https://smlr.rutgers.edu/sites/ default/files/2018disabilityturnout.pdf. As voter turnout among people without disabilities in Massachusetts increased from 47.5% to 56.5% between the 2014 and 2018 midterm elections, people with disabilities went from 42.3% to 47.8%. *Id.*

There is a readily available option that Defendants could implement to make remote voting options accessible and available to Plaintiffs and similarly situated voters who are blind or have other disabilities that prevent them from effectively reading or writing print ("print disabilities"). Defendants currently permit military voters, dependent family members of military voters, and overseas citizens who are protected by the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA) the option of returning their ballots in all elections by email.[2]

Even if only a temporary solution for the 2020 general election, allowing for electronic submission of accessible electronic ballots available through Massachusetts' current AVBM program as a reasonable modification will address accessibility barriers to the existing vote by mail and absentee voting systems available in Massachusetts for voters with print disabilities who cannot otherwise vote privately and independently.

## STATEMENT OF FACTS

I.   **RISKS OF VOTING DURING THE COVID-19 PANDEMIC**

The 2020 general election is fast-approaching while Massachusetts, like the rest of the United States, remains in the unpredictable grips of COVID-19. The best way to prevent the spread of COVID-19 is to avoid exposure to it.[3] COVID-19 spreads "through respiratory droplets produced when an infected individual coughs, sneezes, sings, or talks"[4] and "asymptomatic spreaders have been called the "Achilles' heel" of prevention strategies." *Savino v. Souza*, 2020 WL 2404923, at *5 (D. Mass. May 12, 2020) (citations omitted). Aside from staying home and avoiding crowds, key infection control measures include wearing face coverings and maintaining

---

[2] Secretary of the Commonwealth of Massachusetts, *Voting for Military and Overseas U.S. Citizens*, https://www.sec.state.ma.us/ele/elemil/milidx.htm.
[3] Centers for Disease Control and Prevention ("CDC"), *Coronavirus Disease 2019 (COVID-19): How to Protect Yourself & Others* (September 11, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html.
[4] CDC, *Coronavirus Disease 2019 (COVID-19): How to Protect Yourself & Others* (September 11, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html.

a distance of six feet from others while in the community. Strict observance of these practices is especially important for people who are elderly, have medical conditions that place them at risk of serious illness or death from COVID-19, and routinely interact with high-risk individuals.[5]

The dangers COVID-19 poses inside polling places, where people must congregate in order to exercise their right to vote, are real.[6] Voters with disabilities who may be unable to operate a motor vehicle must also take public transportation or ride shares in order to get to polling places, if they are not close to where they live.[7] Due to infection control concerns, public transportation service levels have been reduced, with some bus routes suspended entirely.[8]

Many voters with print disabilities, like Plaintiffs, must utilize an AutoMARK voting machine in order to access the content of a written ballot at the polling place independently, which brings with it additional risks related to COVID-19.[9] For blind voters, this process necessarily involves a considerable amount of touching to navigate the temporary set up of the polling site and voting equipment, including physical contact with poll workers and common surfaces when they are directed where to collect their ballot, escorted to the AutoMARK, put on the headset used by other voters, touch the AutoMARK to navigate through the ballot, and are escorted back to the table to turn in the ballot. Notably also, many voters who utilize the AutoMark will not have the physical ability to observe safety measures put in place to support social distancing – e.g., taped lines and stickers on the ground.

---

[5] *See* CDC, *People with Certain Medical Conditions* (August 14, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.
[6] *See, e.g.*, DeWitt, de St. Maurice, & Rios, *Voting and Infection Prevention of COVID-19*, The UCLA Voting Rights Project (Apr. 1, 2020), https://latino.ucla.edu/wpcontent/uploads/2020/04/UCLA-VBM-Health-Safety-Report-2.pdf.
[7] *See id.*
[8] Massachusetts Bay Transportation Authority, *Coronavirus Updates*, https://www.mbta.com/covid19#service.
[9] Per the Secretary's website, in light of "federal law and state requirements mandat[ing] that voting systems be equipped for voters with disabilities allowing such voters to have the same opportunity to vote privately and independently…every precinct must have at least one accessible voting machine available."  Massachusetts uses AutoMARK Voter Assist Terminals. Secretary of the Commonwealth of Massachusetts, *Voting for Persons with Disabilities – Accessible Voting Equipment*, https://www.sec.state.ma.us/ele/eleaccessible/accessibleidx.htm.

Voters with mobility/dexterity disabilities may face similar safety issues accessing poll sites during the pandemic. Wheelchair users may not be able to maintain a six-foot distance from other voters and staff at polling sites that are not designed with wheelchairs in mind. Voters who cannot complete the paper ballot due to mobility/dexterity disabilities are also supposed to have the option to use the AutoMARK via a sip/puff tube connected to the machine in order to vote privately and independently, but use and sterilization of a communal sip/puff tube obviously poses significant safety and infection control concerns.

## II.     EXPANDED VOTE BY MAIL CREATED FOR THE 2020 ELECTIONS

In recognition of the public health risks and the need for more voting options due to COVID-19, "An Act Relative to Voting Options in Response to COVID-19" passed in July 2020 and established the right of all registered Massachusetts voters to cast ballots by mail in both the 2020 primary and general elections. *See* Acts of 2020, Chapter 115, §§ 6(b), 10, 15, 16, 17. )

Per Section 6(i), "a voter wishing to apply to vote early by mail in the <u>primary or general election</u> and who needs accommodation by reason of disability may request such accommodation from the state secretary." *Id.* at § 6(i) (emphasis added). After the Secretary receives information from the voter "pursuant to the application in this section either by phone or electronically," Section 6(i) states that the Secretary "shall grant accommodations to the voter" that:

> [s]hall include, but not be limited to: (i) clear and electronic accessible instructions for completion, printing and returning of the ballot; (ii) an authorized accessible blank electronic ballot that can be filled out electronically, printed and signed; provided, however, that the accessible electronic ballot marking system the voter utilizes to access their blank electronic ballot shall not collect or store any personally identifying information obtained in the process of filling out the ballot; (iii) an envelope to return the ballot to the voter's town or city clerk; and (iv) hole punched markers in place of a wet signature required for certification.

With the combination of vote by mail, early in-person voting, and in-person voting on September 1, 2020, Massachusetts had a record turnout of 1.7 million voters during the primary

election.[10] While it is unclear how many of the final ballot tally were mailed in, as of August 30, 2020, "election officials statewide received more than 768,000 Democratic ballots and more than 88,000 Republican ballots statewide, most of which were mail-in ballots."[11]

By contrast, only 14 persons with print disabilities were approved by the Secretary to use the electronic vote by mail ballot. Eight additional voters attempted to gain access, but were not provided access to the electronic ballot after their requests were deemed incomplete.[12] At least three of the 14 people granted access – Plaintiffs Rivero, Wice, Milojevic, and Kadlik – were not able to successfully complete the process required by the AVBM program. *See* Declaration of Plaintiff Barbara Rivero in Support of Plaintiffs' Motion for Preliminary Injunction, Ex. A., ¶¶ 12-16; Declaration of Plaintiff James Wice in Support of Plaintiffs' Motion for Preliminary Injunction, Ex. B, ¶¶ 10-11; Declaration of Plaintiff Cory Kadlik in Support of Plaintiffs' Motion for Preliminary Injunction, Ex. D, ¶¶ 11-14.

For the general election, a voter with print disabilities approved to participate in the AVBM program who completes their accessible electronic ballot privately and independently in a web browser on their computer, tablet, or smart phone using their personal assistive technology and devices, must then complete the following long list of steps in order to cast their vote after: (a) print the electronic ballot and visually verify that the printout is correct; (b) physically

---

[10] Lisa Kashinsky, *Massachusetts primary sets turnout record with vote-by-mail expansion amid coronavirus, Boston Herald* (September 9, 2020), https://www.bostonherald.com/2020/09/09/massachusetts-primary-sets-turnout-record-with-vote-by-mail-expansion-amid-coronavirus/.

[11] Steph Solis, *Massachusetts primary drew 1.7 million voters, breaking 1990 turnout record in first major election with new vote-by-mail law*, MassLive (September 9, 2020), https://www.masslive.com/politics/2020/09/massachusetts-primary-drew-17-million-voters-breaking-1990-turnout-record-in-first-major-election-with-new-vote-by-mail-law.html.

[12] These figures were provided to Disability Law Center in reporting pursuant to the Massachusetts Supreme Judicial Court's judgment in *Charlson, et al. v. Secretary of the Commonwealth*, No. SJ-2020-0588 (August 26, 2020) (Ex. E). The Judgement was amended by the SJC's granting of the Parties Joint Motion to Amend Judgement on August 27, 2020 (Ex. F), clarifying that typed signatures on applications to vote by mail for people requesting accommodations were acceptable if accompanied by a state that the individual was unable to independently insert an electronic hand-drawn signature due to their disability.

remove the printed electronic ballot from the printer; (c) locate the large, outer envelope sent to the voter's address, which contains the internal ballot envelope,[13] and postage paid return envelope; (d) open the outer envelope and remove the ballot envelope inside; (e) place the printed and signed electronic ballot inside the ballot envelope; (f) locate the hole punch on the ballot envelope indicating the location of the signature line; (g) add their signature by hand to swear under the penalties of perjury that the voter is registered in Massachusetts, will not cast a ballot in another location, and that the information written on the envelope is true; (h) seal the ballot envelope, place it inside the return envelope, and seal the return envelope; and (i) place the return envelope in the mail or drop it off with local election officials or at a designated drop box.

## III.   EXPERIENCES OF THE INDIVIDUAL PLAINTIFFS AND THEIR NEED FOR A FULLY ACCESSIBLE AVBM PROGRAM FOR THE GENERAL ELECTION

Plaintiff Barbara Rivero is a registered voter who resides in Boston, Massachusetts. *See* Ex. A. at ¶¶ 1-2. Ms. Rivero wants to vote in the 2020 general election privately and independently from home. *Id.* at ¶¶ 3, 17. She is quadriplegic, ventilator dependent, and uses a wheelchair pushed by her personal care attendant. *Id.* at ¶¶ 5-6. She is in the high-risk category of serious or fatal complications due to COVID-19. *Id.* at ¶ 6. Ms. Rivero is adept at using her computer with sip/puff assistive technology, which would allow her to complete an electronic ballot and submit it electronically from home without assistance. *Id.* at ¶ 7. Because Ms. Rivero has no ability to use her hands, she cannot physically sign any document, but can produce a typed signature using her computer. *Id.* at ¶ 8. The current procedures established by Defendants for the AVBM program prevent Ms. Rivero from being able to vote privately and independently from home because, due to her disability, she cannot do the following without assistance: remove the ballot from the printer; open the envelope from local election officials containing the ballot

---

[13] An image of vote by mail ballot envelope distributed for the September 1, 2020 primary is available at Ex. G.

and return envelopes or remove them; open or seal the ballot envelope; complete the ballot envelope; seal the return envelope and place it into the mail or a ballot box. *Id.* at ¶ 11. Ms. Rivero experienced challenges accessing the AVBM program for the 2020 primary, even with assistance from her personal care attendant, including technical problems with her printer. *Id.* at ¶¶ 12-16. Ms. Rivero could vote privately and independently from her home with the accommodations of being able to submit her electronic ballot by email or other electronic means with an accessible electronic affirmation concerning her ballot and voter information that could be completed use an accessible form of identification, such as a typed signature. *Id.* at ¶ 17.

Plaintiff James Wice is a registered voter who resides in Boston, Massachusetts. *See* Ex. B at ¶¶ 1-2. Mr. Wice wants to vote in the 2020 general election privately and independently from home. *Id.* at ¶¶ 4, 12. He is a C4/5 quadriplegic from a spinal cord injury who is at high risk for serious complications if he were to contract COVID-19. *Id.* at ¶¶ 6-7. With function in his shoulders and biceps, Mr. Wice is able to use the tightness in his hands, in combination with splints with cuffs on his hands and wrists, to utilize utensils and other adaptive equipment. *Id.* at ¶ 6. The current procedures established by Defendants for the AVBM program prevent Mr. Wice from being able to vote privately and independently from home because, due to his limited manual dexterity, he may have difficulty removing the ballot from the printer – if he were to drop the printout, he could not pick it up off the floor without help – and would definitely require assistance with the following: opening the envelope from local election officials containing the ballot and return envelopes and removing them; placing the printed electronic ballot into the ballot envelope; completing the affirmation on the ballot envelope; and sealing the ballot envelope, placing it in the return envelope, and sealing the return envelope. *Id.* at ¶ 11. Mr. Wice experienced challenges accessing the AVBM program for the September 1, 2020 primary that

included his printer malfunctioning. *Id.* at ¶¶ 10-11. Mr. Wice would be able to vote privately and independently from his home if Defendants permitted as accommodations for his disability, submission of his electronic ballot by email or other electronic means with an accessible electronic affirmation concerning his ballot and voter information that could be completed using an accessible form of identification, such as a typed signature. *Id.* at ¶ 12.

Plaintiff Tanja Milojevic is a registered voter who resides in Peabody, MA. *See* Declaration of Plaintiff Tanja Milojevic in Support of Plaintiffs' Motion for Preliminary Injunction, Ex. C, ¶¶ 1-2. Ms. Milojevic wants to vote in the 2020 general election privately and independently from home by participating in the AVBM program. *Id.* at ¶¶ 3, 4, 14. Ms. Ms. Milojevic had difficulty getting approved to use the AVBM program for the September 1, 2020 primary; she also does not own a printer. *Id.* at ¶¶ 9-13. Because she is blind, Ms. Milojevic cannot privately and independently access the current AVBM program because, even if she acquired a printer, she would require assistance to ensure that: her ballot printed properly; she correctly completed the voter affirmation printed on the ballot envelope that she cannot read and must sign under the penalties of perjury; and she properly filled and sealed the envelopes. *Id.* at ¶¶ 5, 13. Ms. Milojevic would be able to vote privately and independently from her home with the accommodation of being able to submit her electronic ballot by email or other electronic means with an accessible electronic affirmation concerning her ballot and voter information that could be completed with an accessible form of identification, like a typed signature. *Id.* at ¶ 14.

Plaintiff Cory Kadlik is a registered voter who resides in Natick, Massachusetts. *See* Ex. D at ¶¶ 1-2. Mr. Kadlik wants to vote in the 2020 general election privately and independently from home by participating in the AVBM program. *Id.* at ¶¶ 3, 9, 10. Because he is blind, Mr. Kadlik cannot privately and independently access the current AVBM program as he would

require assistance to ensure that his ballot printed properly; he correctly completed the voter affirmation under the penalties of perjury that he cannot read; and he properly filled and sealed the envelopes. *Id.* at ¶¶ 4, 8. Mr. Kadlik experienced challenges accessing the AVBM program for the September 1, 2020 primary. *Id.* at ¶¶ 11-14. Mr. Kadlik would be able to vote privately and independently from his home with the accommodation of being able to submit his electronic ballot by email or other electronic means with an accessible electronic affirmation concerning his ballot and voter information that could be completed with an accessible form of identification, such as a typed signature. *Id.* at ¶ 9.

## IV.   REASONABLE MODIFICATIONS TO PERMIT PLAINTIFFS MEANINGFUL ACCESS TO THE AVBM PROGRAM ARE AVAILABLE

An AVBM program requiring that voters with print disabilities print their completed accessible electronic ballots, sign an affirmation by hand, stuff envelopes, and mail or deliver the completed package to local elections officials is not the only option.

Indeed, Defendants already offer the option of returning completed ballots electronically, just not to voters with disabilities. In keeping with obligations under federal law, Massachusetts participates in a special absentee voting program for military voters, dependent families of military voters, and overseas voters under the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA), 52 U.S.C. § 20301 *et seq.*[14] UOCAVA voters receive the same ballot as other Massachusetts voters. UOCAVA voters have the option of returning their ballots via email in every election. UOCAVA voters who do not receive their Massachusetts ballots in time, or even apply to Defendants for an absentee ballot, can use the Federal Write-in Absentee Ballot, which they may also submit via email.[15]

---

[14] Secretary of the Commonwealth of Massachusetts, *Voting for Military and Overseas U.S. Citizens*, https://www.sec.state.ma.us/ele/elemil/milidx.htm.
[15] *Id.*

Per a report prepared by the U.S. Election Assistance Commission concerning the 2018 elections, Massachusetts was among the top thirteen states with the highest numbers of both UOCAVA ballot transmissions, with a total of at least 9,103 ballots transmitted to military and oversees citizens, and UOCAVA ballot returns, with a total of at least 6,638 ballot returns.[16]

Permitting a much smaller number of registered voters with print disabilities residing in Massachusetts, who have been individually approved after making requests for accommodation and must use a PIN to access their accessible electronic ballot, to submit those ballots electronically should create no hardship for Defendants.

## ARGUMENT

I.   **A PRELIMINARY INJUNCTION SHOULD BE ISSUED TO ENSURE PLAINTIFFS CAN PRIVATELY AND INDEPDENTLY CAST AN ACCESSIBLE ELECTRONIC BALLOT IN THE 2020 GENERAL ELECTION**

In enacting the ADA, Congress concluded that "individuals with disabilities…have been…relegated to a position of political powerlessness in our society, based on characteristics that are beyond the control of such individuals." *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 503 (4th Cir. 2016), quoting *Tennessee v. Lane*, 541 U.S. 509, 516 (2004); 42 U.S.C. § 12101(a)(7). Likewise, an express purpose of the Rehabilitation Act is "to empower individuals with disabilities to maximize… independence, and inclusion… into society, through… the guarantee of equal opportunity." *California Council of the Blind v. Cty. of Alameda*, 985 F. Supp. 2d 1229, 1239 (N.D. Cal. 2013), quoting 29 U.S.C. § 701(b)(1)(F). "Ensuring that disabled individuals are afforded an opportunity to participate in voting that is equal to that afforded others, 28 C.F.R. § 35.130, helps ensure that those individuals are never relegated to a position of political powerlessness." *Nat'l Fed'n of the Blind*, 831 F. 3d. at 507).

---

[16] U.S. Election Assistance Commission, *Election Administration and Voting Report: 2018 Comprehensive Report,* pp. 92, 97, https://www.eac.gov/sites/default/files/eac_assets/1/6/2018_EAVS_Report.pdf.

Massachusetts' universal vote by mail program, along with its AVBM program component, deny Plaintiffs and other voters with print disabilities meaningful access by requiring reliance upon assistance from third parties to complete the process.[17] Meanwhile, voters who can access the vote by mail paper ballot, need only have a pen to complete ballot and ballot envelope, before returning it in a prepaid envelope.

In evaluating a request for a preliminary injunction, the Court must consider four factors:

> [T]he movant's likelihood of success on the merits"; "whether and to what extent the movant will suffer irreparable harm" in the absence of injunctive relief; "the balance of [relative] hardships," that is, the hardship to the nonmovant if enjoined as opposed to the hardship to the movant if no injunction issues; and "the effect, if any, that an injunction [or the lack of one] may have on the public interest."

*CVS Pharmacy, Inc. v. Lavin*, 951 F.3d 50, 55 (1st Cir. 2020), citing *Corp. Techs., Inc. v. Harnett*, 731 F.3d 6, 9 (1st Cir. 2013). "The first two factors are the most critical," *Respect Maine PAC v. McKee*, 622 F.3d 13, 15 (1st Cir. 2010), and the "[l]ikelihood of success is the main bearing wall of the four-factor framework." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 16 (1st Cir. 1996) (citation omitted).

Just last week, a U.S. District Court granted a preliminary injunction in a similar matter seeking meaningful access to North Carolina's absentee voting program for blind voters under the ADA and Section 504 and ordered the State Board of Elections to implement the Democracy Live portal, which it makes available to UOCAVA voters, for blind voters for the 2020 election. *Taliaferro v. NC State Bd. of Elections,* 2020 WL 5709252, at *5 (E.D.N.C. Sept. 24, 2020). The same result is necessary to ensure that voters with print disabilities in Massachusetts have meaningful access to the AVBM program with reasonable modifications that allow them to vote

---

[17] The current AVBM program also requires voters who can only complete ballots through the AVBM program to have access to a printer – in addition to the auxiliary aids that they already possess to allow them to complete the electronic ballot – requiring them to purchase a printer if they do not already own one or leave home to use one.

privately and independently in the upcoming presidential election.

### A. **Plaintiffs Are Likely to Succeed on their Claims that the ADA and Section 504 Require an Accessible AVBM program.**

To establish a violation of Title II or Section 504 claims, Plaintiffs must show (1) that they are "qualified individual[s] with a disability"; (2) that they were "either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or [were] otherwise discriminated against"; and (3) that they were excluded, denied benefits, or discriminated against "by reason of [their] disability." *Parker v. Universidad de Puerto Rico*, 225 F.3d 1, 5 (1st Cir. 2000); *see also* 42 U.S.C. § 12132; 29 U.S.C.§ 794(a).

#### 1. *Plaintiffs are qualified individuals with disabilities.*

Under the ADA,[18] a disability is a "physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(1)(A). Plaintiffs Rivero, a BCIL member, and Plaintiff Wice, a BCIL Board member, have spinal cord injuries that substantially limit major life activities including their mobility and manual dexterity. Plaintiffs Milojevic and Kadlik are blind, which substantially limits their ability to see, and, in turn, to read print; both are also members of BSCB.

A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable modifications to rules, policies or practices . . . or the provision of auxiliary aids and services, meets the essential eligibility requirements for . . . participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2); *see also* 29 U.S.C. § 794. Each of the individual Plaintiffs are registered to vote in Massachusetts, intend to vote in the November 2020 election, and are entitled to participate in vote by mail if they so choose, making them

---

[18] As Title II of the ADA is expressly modeled on Section 504 and the two are interpreted interchangeably, Plaintiffs' references to Title II and the ADA incorporate reference to Section 504. *See Parker*, 225 F.3d at 4; *Theriault v. Flynn*, 162 F.3d 46, 48 n. 3 (1st Cir.1998).

"qualified individual[s]" with disabilities. *See, e.g.*, 42 U.S.C. §§ 12102(1), 12131(2); 29 U.S.C. § 705(20)(B); *Doe v. Rowe*, 156 F. Supp. 2d 35, 58 (D. Me. 2001).

     **2.** ***Defendants' failure to provide Plaintiffs and other voters with print disabilities meaningful access to Massachusetts' universal vote by mail program for the 2020 general election violates the ADA and Section 504.***

     i. <u>Defendants are public entities that must comply with Title II of the ADA and Section 504.</u>

Title II of the ADA governs the conduct of any "public entity," meaning "(A) any State or local government; [or] (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1). Section 504 of the Rehabilitation Act governs the programs or activities of all recipients of federal financial assistance. 29 U.S.C. § 794(b). The Department of the State Secretary, created by the laws of Massachusetts, is responsible for implementation of state law concerning primaries and elections and promulgation of regulations and rules related to election requirements and processes, including those concerning the rights of individuals with disabilities. *See, e.g.,* M.G.L. c. 9, § 2; 950 CMR 47; 950 CMR 51. The Department therefore constitutes a public entity. The Secretary of the Commonwealth is the head of the Department, sued here in his official capacity. Defendants' receipt of federal financial assistance to help administer its elections, including Coronavirus Aid, Relief, and Economic Security Act ("CARES") Act and Help America Vote Act ("HAVA") funds, makes Defendants subject to the Rehabilitation Act. *See* 29 U.S.C. § 794(a). Defendants are therefore public entities subject to antidiscrimination provisions the ADA and the Rehabilitation Act. *See Nat'l Fed'n of the Blind*, 813 F.3d at 502-03.

     ii. <u>The AVBM program is a program, service, or activity of Defendants.</u>

Title II of the ADA applies to all of a public entity's "services, programs, or activities." 42 U.S.C. § 12132; see *Doe v. Mass. Dep't of Corr.*, 2018 WL 2994403, at *8 (D. Mass. June 14,

2018). Massachusetts' vote by mail program, and the AVBM program available as an accommodation for voters with disabilities, are programs or services within the meaning of the ADA that must be made accessible. *See Nat'l Fed'n of the Blind*, 813 F.3d at 503-05; *Parker*, 225 F.3d at 5 (citation omitted).[19]

      iii.  <u>The current AVBM program discriminates against Plaintiffs because of their disabilities.</u>

Defendants have created a process that makes the AVBM program inaccessible to Plaintiffs and many others for whom it was created to accommodate. After voters with disabilities complete the accessible electronic ballot using their assistive technology, they face a series of steps that constitute barriers for Plaintiffs and other people with print disabilities.

For instance, even if all voters with print disabilities had printers, voters with mobility/dexterity disabilities like Plaintiffs Rivero and Wice may foreseeably have difficulty or be entirely unable to do the following without assistance: remove the electronic ballot from the printer and place it inside the ballot envelope, sign the ballot envelope, and place the ballot envelope inside the return envelope, sealing both. *See* Ex. A at ¶ 11; Ex. B at ¶ 11. Similarly, blind voters like Plaintiffs Milojevic and Kadlik can be expected to have difficulty or be entirely unable to, without assistance: verify that the printed ballot is correct, read the statement printed on the ballot envelope that must be attested to under the penalties of perjury, and properly place a legible hand-drawn signature on the ballot envelope. *See* Ex. C at ¶ 13; Ex. D at ¶ 8.

"One of the explicit policies underlying the enactment of Section 504 was to ensure that" federally financed programs were "'carried out in a manner consistent with the principles

---

[19] While Plaintiffs and other voters with print disabilities may still go to the polls to utilize the AutoMARK, the ability to vote by mail and the AVBM programs, rather than the Commonwealth's entire voting system, is the "appropriate object of scrutiny for compliance with the ADA.*" Nat'l Fed'n of the Blind*, 813 F.3d at 504. This conclusion is all the more valid during the COVID-19 pandemic.

of…respect for the privacy, rights, and equal access (including the use of accessible formats), of…individuals [with disabilities].'" *Nat'l Ass'n of the Deaf v. Harvard Univ.*, 2016 WL 3561622, at *2 (D. Mass. Feb. 9, 2016) (alterations in original), quoting 29 U.S.C. § 701(c)(2), *report and recommendation adopted*, 2016 WL 6540446 (D. Mass. Nov. 3, 2016). By requiring that Plaintiffs complete the current inaccessible process to participate in the AVBM program with the assistance of others, Defendants deny Plaintiffs and others with print disabilities an equal opportunity to participate in the vote by mail program, afford them a service that is not as effective as that provided to other voters, fail to make reasonable modifications necessary to avoid discrimination on the basis of disability, and fail to satisfy the state's obligation to provide equally effective communication "in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 35.160(b)(2); s*ee* 28 C.F.R. § 35.160(a)(1); 28 C.F.R. §§ 35.130(b)(1)(ii)-(iii), 35.130(b)(7)(i); *Nat'l Fed'n of the Blind*, 813 F.3d at 506; *Disabled in Action v. Bd. of Elections in City of NY*, 752 F.3d 189, 198–99 (2d Cir. 2014). Violation of these regulatory obligations constitutes a failure to provide "meaningful access." *Pollack v. Reg'l Sch. Unit 75*, 886 F.3d 75, 81 (1st Cir. 2018) (citation omitted).

The law does not permit Defendants to require that disabled individuals rely upon the kindness, availability, and accuracy of nondisabled third parties in completing the process required by the AVBM program or other at-home voting options that require an ability to complete paper forms. *See, e.g., Disabled in Action,* 752 F.3d at 200 ("The right to vote should not be contingent on the happenstance that others are available to help."); *California Council of the Blind*, 985 F. Supp. 2d at 1239-40 ("Even if blind and visually impaired voters can communicate their votes with the assistance of third parties, they certainly cannot "enjoy the

benefits of" the secret ballot afforded to most other voters."); *American Council of the Blind v. Paulson*, 525 F.3d 1256, 1267-68 (D.C. Cir. 2008) (the Rehabilitation Act's emphasis on independent living and self-sufficiency ensures that, for the disabled, the enjoyment of a public benefit is not contingent upon the cooperation of third persons.").

      iv.  <u>Reasonable modifications and auxiliary aids and services would allow Plaintiffs meaningful access to the AVBM program.</u>

The AVBM program can be made accessible to Plaintiffs and others with print disabilities by providing reasonable modifications to permit electronic submission of the completed accessible electronic ballot and use of an accessible form of identification in the affirmation accompanying the ballot for individuals who cannot produce a hand-drawn signature. Defendants can provide these reasonable modifications by simply employing the email submission process that is already afforded to thousands of UOCAVA voters and providing the same accessible electronic affirmation Defendants provided as part of the AVBM program for the primary. Defendants may also choose other measures to remedy this discrimination.

Based on the foregoing, Plaintiffs are likely to succeed on the merits of their ADA and Rehabilitation Act claims.

**B.  Plaintiffs Will Suffer Irreparable Harm If They Must Forego Voting Privately and Independently in the 2020 General Election.**

Absent a preliminary injunction, Plaintiffs are at imminent risk of suffering irreparable harm "that is not accurately measurable or adequately compensable by money damages," *Ross-Simons*, 217 F.3d at 13 (citation omitted), and is "more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store," *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004). Interference with a person's fundamental right to vote constitutes irreparable harm. *See, e.g., Harman v. Forssenius*, 380 U.S. 528, 537

(1965); *League of Women Voters of NC v. NC,* 769 F.3d 224, 247 (4th Cir. 2014); *Obama for Am. v. Husted,* 697 F.3d 423, 436 (6th Cir. 2012); *Taliaferro,* 2020 WL 5709252 at *5; *Nat'l Fed'n of the Blind, Inc. v. Lamone*, 2014 WL 4388342, at *15 (D. Md. Sept. 4, 2014), *aff'd* 813 F.3d 494; *Devine v. State of Rhode Island*, 827 F. Supp. 852, 866 (D.R.I. 1993).

Absent an injunction, Plaintiffs will be forced either to risk their health and their loved ones' health by voting in person or forfeit their right to vote privately and independently, or at all, in the upcoming general election. Thus, Plaintiffs have demonstrated irreparable harm which can only be remedied by immediate action on the part of Defendants ordered by this Court.

### C. The Balance of Hardships Tips in Plaintiffs' Favor.

The balance of hardships tips in favor of providing a reasonable modification of the AVBM program to allow voters with print disabilities to return their ballots electronically. *See Lavin,* 951 F.3d at 55. Constitutional rights override the right of a defendant to continue to engage in a discriminatory practice. *See VaqueriaTres Monjitas, Inc. v. Fabre Laboy,* 2007 WL 9717645 (D.P.R. July 11, 2007), *aff'd* 587 F.3d 464 (1st Cir. 2009), *cert. denied, Aquino v. Suiza Dairy, Inc.,* 563 U.S. 1001 (2011); *see also Firecross Ministries v. Municipality of Ponce,* 204 F.Supp.2d 244, 251 (D.P.R. 2002) ("[T]he balance weighs heavily against Defendants, since they have effectively silenced Plaintiff's constitutionally protected speech."); *Haskins v. Stanton*, 794 F.2d 1273, 1277 (7th Cir. 1986) (finding that an injunction requiring defendants to comply with existing law imposes no burden but "merely seeks to prevent the defendants from shirking their responsibilities"). The proposed injunctive relief must also pose more than mere fiscal and administrative problems to defendants to tip the balance away from the plaintiff who will suffer harm in the absence of relief. *See Todd ex. rel Todd v. Sorrell*, 841 F.2d 87, 88 (4th Cir. 1988).

Here, the harm Plaintiffs would suffer by risking their health to vote in person or

forfeiting their fundamental right to vote if a reasonable modification of the AVBM program is not made outweighs any administrative or monetary costs to Defendants. *See, e.g., Democracy NC v. NC State Bd. of Elections*, 2020 WL 4484063 at *54-55 (M.D.N.C. Aug. 4, 2020) (finding that balance tipped in favor of blind voter seeking access to the ballot). Defendants already allow UOCAVA voters to return their ballot via email. Permitting voters with print disabilities the same access as UOCAVA voters have to the voting process is readily achievable and has minimal costs. Defendants also have adequate time between now and November 3, 2020 to implement the reasonable modification requested by Plaintiffs, especially compared to the time in which other state boards of elections have implemented other forms of accessible absentee voting in other elections affected by COVID-19 this year – for example, four days in Michigan in *Powell v. Benson*, Case 2:20-cv-11023-GAD-MJH (E.D. Mich. May 1, 2020) (Ex. H) and six days in Pennsylvania in *Drenth v. Boockvar*, 2020 WL 2745729 (M.D. Pa. May 27, 2020). Finally, increased participation in an activity, such as voting, which is within the public interest is also a factor which balances in favor of Plaintiffs. *See, e.g., Vamos, Concertacion Ciudadana, Inc. v. Commonwealth of Puerto Rico*, 2020 WL 5708729 at *24 (D.P.R. September 24, 2020).

### D. Accessible Voting for Plaintiffs and Other Voters with Print Disabilities is in the Public Interest.

A preliminary injunction ordering a fully accessible AVBM program for voters with print disabilities is in the public interest. Voting is a "critical area" for people with disabilities that Congress meant to protect in passing the ADA. 42 U.S.C. § 12101(a)(3). "[T]he public has a strong interest in exercising the 'fundamental political right' to vote, " *Husted*, 697 F.3d at 436-37 (internal quotations omitted), and "[t]he public interest ... favors permitting as many qualified voters to vote as possible," *League of Women Voters*, 769 F.3d at 247. With respect to the upcoming presidential election, at least one court in the

First Circuit has already recognized the importance to "[t]he public interest in ensuring citizens their constitutional right to vote and safeguarding public health and preventing the spread of the COVID-19 virus." *Ocasio v. Comision Estatal De Elecciones*, 2020 WL 5530274 at \*5 (D.P.R. September 14, 2020); *see also Lamone*, 2014 WL 4388342 at \*15 (an injunction "assur[ing] that people with disabilities can vote privately and independently by absentee ballot" is in the public interest even in the absence of a public health crisis).

Vote by mail participation for the 2020 primary election indicates that Massachusetts voters have expressed their view that remote voting during a pandemic is preferred. The judgment of the citizens of the Commonwealth is another factor indicating that the public interest weighs in favor of issuing this preliminary injunction, which would allow individuals with print disabilities to vote privately, independently, and safely. *See Hagopian v. Dunlap,* 2020 WL 4736460 at \*8 (D.Me. August 14, 2020).

## II.     THE COURT SHOULD WAIVE BOND

Plaintiffs respectfully submit that the Court should waive the requirement that Plaintiffs give security in the event a preliminary injunction is issued. "[B]ecause, under Fed. R. Civ. P. 65[(c)], the amount of any bond to be given upon the issuance of a preliminary injunction rests within the sound discretion of the trial court, the district court may dispense with the filing of a bond." *Clarkson Co. v. Shaheen*, 544 F.2d 624, 632 (2d Cir.1976) (citations omitted). The bond may be waived "in suits to enforce important federal rights or public interests." *Crowley v. Local No. 82, Furniture & Piano Moving, Furniture Store Drivers, Helpers, Warehousemen, & Packers*, 679 F.2d 978, 1000 (1st Cir. 1982), *rev'd on other grounds*, 467 U.S. 526 (1984); *see Pharm. Soc. of State of NY, Inc. v. NY State Dep't of Soc. Servs.*, 50 F.3d 1168, 1175 (2d Cir. 1995) (finding waiver of bond requirement proper in litigation "pursued to enforce 'public

interests' rising out of a comprehensive health and welfare statute."); *Taliaferro*, 2020 WL 5709252 at *5 (waiving bond in granting preliminary injunction requiring defendant to make web portal available to UOCAVA voters available for blind voters for the 2020 general election).

Important federal rights guaranteed by Section 504 and Title II of the ADA are at stake in this suit and Plaintiffs demonstrate a likelihood of success on the merits. The injunction merely seeks to require Defendants to comply with federal law to ensure that voters with disabilities can exercise their fundamental right to vote in the 2020 general election. If granted, the injunction poses little, if any, financial risk to Defendant. *See Ligotti v. Garofalo*, 562 F.Supp.2d 204, 227 (D.N.H.2008). However, posting a security would be a hardship for Plaintiffs as members of the disability community who have joined this case to ensure that they and others with print disabilities can safely, privately, and independent vote in the 2020 presidential election.

## CONCLUSION

Title II of the ADA and Section 504 of the Rehabilitation Act require Defendants to provide Massachusetts voters with print disabilities an opportunity to vote privately and independently from home during the COVID-19 pandemic equal to the opportunity offered to all other voters. Plaintiffs request that this Court issue a preliminary injunction directing Defendants to implement for the November 2020 general election an AVBM program that provides Plaintiffs and other voters with print disabilities the opportunity to vote privately and independently by permitting electronic submission of the accessible electronic ballots with an accessible electronic affirmation that can be completed using accessible forms of identification, in lieu of a hand drawn signature. Plaintiffs further request that no bond be required.

Dated: October 2, 2020

Respectfully submitted,

**Plaintiffs Barbara Rivero, James Wice, Tanja Milojevic, Cory Kadlik, Boston Center for Independent Living, and Bay State Council of the Blind**,
By their attorneys,


 */s/ Tatum A. Pritchard*
Tatum A. Pritchard
BBO # 664502
tpritchard@dlc-ma.org
Thomas Murphy
BBO # 630527
tmurphy@dlc-ma.org
Matthew Steele
BBO # 676711
msteele@dlc-ma.org
Disability Law Center
11 Beacon St., Suite 925
Boston, MA 02108
617-723-8455